# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DAVID DRAKE and BRANDI SNYDER, <br><br> Plaintiffs, <br><br> vs. <br><br> STEPHEN HINDS and RICHARD MCNAY, INC., <br><br> Defendants/Cross-Plaintiffs, <br><br> vs. <br><br> TROY FRIDERES and COCA-COLA ENTERPRISES, INC., <br><br> Cross-Defendants. | No. C05-0015 <br><br><br> **ORDER** |

_____

This matter comes before the court pursuant to Defendants Hinds' & McNay's March 31, 2006 motion for partial summary judgment (docket number 27). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, the defendants' motion is denied.

## I. INTRODUCTION

<u>Statement of Facts Taken in a Light Most Favorable to the Plaintiff</u>

Plaintiff in this matter, Brandi Snyder ("Snyder"), is suing the defendants, Stephen Hinds ("Hinds") and Richard McNay, Inc. ("McNay"), for loss of spousal consortium as the common law wife of Plaintiff David Drake ("Drake"). Drake was permanently injured in an automotive accident with a tractor trailer operated by Hinds for his employer, McNay, on January 28, 2003. Snyder was not involved in the accident but asserts a loss of services, companionship and society.

1

Snyder and Drake began their relationship in September 1995 and have lived together since then. Both were separated and in the process of divorce when they began dating. Snyder and Drake live with Snyder's two children from a previous marriage and their own son who was born in 1996. Snyder and Drake did not participate in any marriage ceremony because they do not believe such an event necessary to demonstrate their lifelong commitment to one other. They recognize that they are not married by the courts but consider themselves to have been living together as married since their relationship began. The two have never been separated and "plan to stay together forever."

Both parties experienced complicated prior divorces. Drake did not part on amicable terms with his ex-wife and relinquished custody of his child from that marriage. Snyder engaged in a custody battle for her two children from a previous marriage. Snyder claims that Drake proposed marriage shortly before the birth of their son Michael. She agreed, but neither party desired to re-enter the formal institution of marriage. At his deposition, Drake stated as follows: "I did that once, I'll never do it again" and "I know how I feel about her, she knows how she feels about me, and anybody that knows us knows it. . . . What difference does it make to the government?" Snyder commented at her deposition how she had "been there, done that." In light of their past experiences, the couple believed that a "piece of paper" might change what they saw as a stable long-term relationship. According to Snyder, "alls that piece of paper does for me is allows me to legally change my name without having to pay for it other than the judge's services."

Drake and Snyder referred to one another at times as boyfriend/girlfriend or fiancé, but claim to have consistently held themselves out as married since the birth of their son Michael in 1996. Neighbors, co-workers, family and local community members may attest to the fact that they publicly declare themselves as husband and wife and consider one another as such. If pressed as to the exact nature of their relationship given their different

2

last names, Snyder will correct people and "tell them we are not legally married, but common law we are." Snyder admits that on paper she may declare herself to be legally single in the absence of an official license, but according to "any other form of the word of marriage, we are married."

Drake and Snyder have no marriage certificate or license, celebrate no anniversary date, and do not reference one another as spouse on official legal paperwork (i.e., health/life insurance, medical/employment records, etc.). Drake identified himself as "not married" on his application for disability insurance benefits. They file separate tax returns because their accountant advised that they were better off doing so if not legally married with proof thereof. Acting on the advice of Drake's social security attorney, Snyder and Drake are inclined to sign legal documents as fiancé pursuant to the birth of their son because the term "fiancé" better clarifies the depth of their relationship than does a label of boyfriend/girlfriend. The parties maintain separate credit cards and automobiles. They share one joint checking account and both of their names are listed on the title to a Plymouth Dodge minivan. Neither party wears a wedding ring, but Drake states that he never wore a wedding ring during his first marriage anyway.

On January 25, 2005, Plaintiffs filed this loss of consortium claim against the defendants under Division One, Counts II & III.

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary

3

judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)).  The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. Id.

### B. The Defendant's Motion for Partial Summary Judgment

The defendant moves for summary judgment, arguing that the plaintiff's claim fails as a matter of law because Snyder cannot prove a common law marriage with Drake. In accordance with Iowa law, a common law marriage must contain the following elements: "(1) [present] intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife." In re Marriage of Martin, 681 N.W.2d 612, 617 (Iowa 2004) (quoting In re Marriage of Weingard II, 278 N.W.2d 505, 510 (Iowa 1979)).  Defendant concedes that plaintiffs fulfill the cohabitation requirement, but argues that the relationship in question fails the remaining two required elements.  First, defendant argues that there is a lack of intent and agreement to be married by both parties.  Second, defendant argues that Snyder and Drake fail to declare themselves publicly as husband and wife.  The court finds that there is a genuine issue of material fact concerning whether the parties are common law married.

4

1. <u>Lack of Present Intent and Agreement</u>

Defendant asserts that Snyder and Drake demonstrate no present intent and agreement to be married and points accordingly to numerous facts. Defendant urges the court to consider the plaintiffs' deposition testimony that they never had a marriage ceremony, do not wear rings, and will not get married in the future as undisputed evidence that the couple failed the first prong of the test set forth under <u>In re Martin</u>. However, "no particular ceremony is necessary . . . all that is required is that the minds of the parties meet in mutual consent" which "may be proven by circumstantial evidence." <u>In re Fisher</u>, 176 N.W.2d 801, 806 (Iowa 1970). Both Snyder and Drake testified that they considered themselves to be in a marriage type relationship and did not enter into formal matrimony because they felt to be married already. Plaintiffs testified that they were not "legally" married in the eyes of the courts, but contend that their relationship marks a lifelong commitment that they are practically living out as husband and wife.

"It is sufficient if the parties cohabitating intend present marriage, and it is immaterial how the intention is evidenced." <u>In re Winegard</u>, 257 N.W.2d 606, 616 (Iowa 1977). An examination of the record, as a whole, offers additional indicia that the parties intended and agreed to enter into a marital relationship: (1) various members of the community generally regard the couple as married; (2) they share a joint checking count; (3) they share joint title to a family motor vehicle; (4) they share one child together and full custody of Snyder's two other children from a previous marriage with whom they live together as a family unit; (5) the couple has cohabitated since their relationship began in 1995; and (6) they have never been separated. The fact that Snyder and Drake often introduce one another as husband and wife also "is in and of itself an acknowledgment of the marital relation, . . . may support other evidence[,] and is important in cases of the kind." <u>In re Fisher</u>, <u>supra</u>, at 807.

Defendant further asserts that Snyder and Drake's cohabitation was initially illicit because Drake was not yet divorced and that the couple has not offered affirmative proof

5

"of a subsequent present intention to change that relationship into a legitimate relationship of husband and wife." Id. at 805. Although the Plaintiffs did not address this issue specifically in their resistance to Defendant's motion, the record provides that Drake proposed marriage to Snyder before the birth of their son in 1996, that she accepted, and that since then the couple have considered themselves to be man and wife. Some facts clearly favor the defendants on this issue. Drake and Snyder identify themselves as single on all legal documents (i.e., taxes, insurance, employment, etc.), but there is sufficient evidence to send this issue to the jury.

2. Lack of Public Declaration that the Parties are Married

Defendant also asserts that plaintiffs fail to meet prong three which forms the "acid test" of a common law marriage by not "holding out to the public" that they are husband and wife. See In re Martin, supra, at 618. The record confirms that the plaintiffs do not file joint tax returns, list each other as spouse on legal forms, own property jointly, or share the same last name. Public records indicate that Snyder and Drake are generally listed as single on official documents. Inconsistencies in the record demonstrate that the couple has at times referred to one another as boyfriend/girlfriend, husband/wife, and fiancé. However, "not . . . all public declarations must be entirely consistent with marriage . . .[a] substantial holding out to the public in general is sufficient." Id. Snyder and Drake contend that they have held themselves out to be man and wife since the birth of their son in 1996. That co-workers, family members, acquaintances, and neighbors observe and can attest to Snyder and Drake's "married type relationship" supports the existence of such a reputation within the community. Drake testified that he usually refers to Snyder as his "wife Brandi" while Snyder testified that she responds in kind. Such references, much like "the appellation of 'Mrs.' [or Mr. when] frequently used," may be considered "evidence of a general reputation of marriage." Id. Drake and Snyder did not just hold themselves out as married when in limited, private social settings. Their declarations, although inconsistent with their posture on legal documents, were made

public to those around them. When asked to explain the status of her relationship, Snyder comments that she is common law married, just not in the traditional legal sense.

The court finds that there exists circumstantial evidence that tends to "create a fair presumption that a common law marital relationship existed." In re Winegard, supra, at 617. A genuine issue of material fact here exists because there is a dispute of fact, specifically whether the plaintiff satisfied the three conditions necessary to establish a common law marriage, the dispute appears to be genuine as a reasonable jury could return a verdict on this issue for either party. See Peter v. Wedl, 155 F.3d 992, 996 (8th Cir. 1998) (citing RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995)). The court's function at the summary judgment stage is not to weigh evidence or establish the truth of the matter, but to determine whether there are genuine issues for trial. See Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Upon the foregoing,

IT IS ORDERED that the defendants' motion for partial summary judgment (docket number 27) and concurrent request for oral argument on the matter are denied.

June 5, 2006.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT